IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

ELIZABETH CISNEROS;
ANTONIO CISNEROS;
CARLOS FAIERS,                                    Civ. No. 1:19-cv-00296-CL

             Plaintiffs,                          **OPINION & ORDER**

        v.

CITY OF KLAMATH FALLS, et al,

             Defendants.

_____

AIKEN, District Judge:

     Plaintiffs Elizabeth Cisneros, Antonio Cisneros, and Carlos Faiers bring this
cause of action against the City of Klamath Falls and several municipal officials,
including Klamath Falls Police Chief David Henslee, City Manager Nathan
Cherpeski, and City Councilor Kendell Bell.  The case comes before the Court on a
Motion for Summary Judgment, ECF No. 37, submitted by all Defendants.
Defendants also move to strike some of Plaintiffs' evidence.

     Magistrate Judge Mark Clarke issued a Findings and Recommendation
("F&R") on the motions.  ECF No. 62.  Defendants filed their Objections to the F&R,
ECF No. 73, and Plaintiffs have filed their Response to the Objections, ECF No. 79.
For the reasons set forth below, the Court ADOPTS the F&R as modified.
Defendant's motion to strike is DENIED, and Motion for Summary Judgment, ECF

No. 37, is GRANTED in part and DENIED in part.  Plaintiffs concede that named Defendants Eric Nobel and William Adams should be DISMISSED from the case and the Court accepts those concessions.  In summary, Plaintiffs have failed to carry their burden to show a dispute of material fact regarding their claims under the Fourteenth Amendment for procedural due process and substantive due process violations. Defendants' Motion for Summary Judgment is granted on those claims.

Plaintiffs have raised a sufficient dispute of material fact regarding their claim for discrimination under the Equal Protection Clause against the City of Klamath Falls and the individual Defendants, as well as their claim for intentional infliction of emotional distress under Oregon state law.  Issue preclusion does not apply, and Defendants are not entitled to qualified immunity.

## LEGAL STANDARDS

### I.    Review of Magistrate Recommendations

Under the Federal Magistrates Act, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  If a party files objections to a magistrate judge's findings and recommendations, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress,

in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."). Although no review is required in the absence of objections, the Magistrates Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Id.* at 154. The Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the court should review the recommendation for "clear error on the face of the record."

## II.    Summary Judgment

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth, but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor · v. List*, 880 F.2d

1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the nonmoving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## BACKGROUND

Plaintiffs are Hispanic family members who are the former and current owners of a Mexican restaurant and lounge called El Palacio in Klamath Falls, Oregon. The Cisneros's operated El Palacio in downtown Klamath Falls in a prominent, landmark building between 2004 and 2017. Their son, Carlos Faiers, is the current owner of the business. Plaintiffs claim that the City of Klamath Falls ("the City"), the Klamath Falls Police Department ("KFPD") at the direction of Chief Henslee, and two city officials, Councilor Bell and City Manager Cherpeski, discriminated against them and targeted them for a higher level of law enforcement activity due to their race.

By contrast, Defendants assert that KFPD, the City, and Chief Henslee were attempting to address the serious and pervasive criminal activity that plagued downtown Klamath Falls for many years. They argue that law enforcement incidents that occurred at or near El Palacio were a result of Plaintiffs failing to abate the over-consumption of alcohol on the premises and failing to cooperate with law enforcement activity meant to keep the community safe.

Finally, Defendants assert that the City officials were doing their jobs to investigate and hold Plaintiffs accountable for the criminal activity taking place at

their establishment.

The parties have submitted hundreds of pages of exhibits, declarations, and affidavits to support their arguments in this litigation. This evidence establishes certain facts that are not in dispute—namely that the downtown Klamath Falls area was subject to a high level of alcohol related criminal activity, and the Klamath Falls Police Department sought to address and abate such activity in a number of ways, including increased law enforcement presence and patrolling in that area. It is undisputed that officers reported numerous incidents involving El Palacio patrons and patrons of other downtown establishments, and it is undisputed that many of those incidents were attributed to El Palacio. What is disputed, however, is whether that attribution was accurate, and whether Defendants' focus on El Palacio was due to Plaintiffs' race.

Plaintiffs claim that on July 31, 2015, a KFPD officer entered El Palacio and told Elizabeth Cisneros to shut the bar down. *Id*. at ¶ 7. Ms. Cisneros stated that the officer did not have any legal authority to shut the bar down and she refused to do so. *Id*. The officer identified himself as the new Chief of KFPD, David Henslee. *Id*. Chief Henslee was new to Klamath Falls, having moved there a couple of months earlier for the position. On August 13, 2015, Chief Henslee sent a letter to Plaintiff Elizabeth Cisneros advising that El Palacio "has been the location of a pattern of activity that has the potential to cause the subject property to be declared a 'Public Nuisance' as defined by City Code." Henslee Decl. at 14. Chief Henslee further advised that if this pattern of behavior continued, the City could make a Public

Nuisance declaration. *Id.* Chief Henslee's letter provided the dates, times, violations and number of arrests for eight incidents that occurred between February 21, 2015, and July 5, 2015. *Id.* Plaintiffs claim that, over the next year, the Cisneros family worked with Chief Henslee to address what Chief Henslee considered to be issues at El Palacio. *Id.* at 9.

El Palacio is one of many bars in a few-block-radius in downtown Klamath Falls. *Id.* at 8. Directly across the street from El Palacio is a bar called The Pikey, while the Basin Martini Bar and 618 are on the same block, and Black Dog Billiards and the VFW are within a couple of blocks. *Id.* The downtown Klamath Falls area has a reputation for being a rowdy place with patrons often circulating between the establishments on weekend nights. *Id.* at ¶ 8; Oldham Dep. 27:12-28:11, 86:3-12 (attached to Decl. Selvig as Ex. 1). Plaintiffs submit evidence that all the establishments in this area have issues with these patrons. Decl. E. Cisneros ¶10, 11; Decl. Faiers ¶ 7; Oldham Dep. 31.:13-32:18. Plaintiffs claim that they were cooperative and attended meetings with Chief Henslee, changed their security company, hired more security, and closed earlier on weekends in an effort to solve the issues. Decl. E. Cisneros ¶ 9.

For reasons unknown to Plaintiffs, the first Notice of Public Nuisance issued by Chief Henslee in August 2015 was dropped without further action. However, despite this, and despite their efforts at cooperation, Plaintiffs claim that soon after the first nuisance letter, officers began walking through El Palacio several times a night, accusing the Cisneros family of refusing to cooperate with them, and

attributing incidents that happened outside of El Palacio to the bar.  Decl. Cisneros ¶ 10; Decl. Faiers ¶ 7.  As mentioned, El Palacio is in a landmark building downtown and often used as a geographical reference point.  However, Plaintiffs assert that police reports began identifying incidents that happened in the street between El Palacio and other bars solely to El Palacio.  Decl. E. Cisneros ¶ 10; Decl. Faiers ¶ 7.

Chief Henslee issued a second public nuisance letter to El Palacio on May 18, 2016.  Decl. Selvig Ex. 29.  He based the notice on his tracking of seventy police reports that he claimed were associated with El Palacio between January 2015 and May 2016.  Plaintiffs claim that the incidents in many of these reports were not actually associated with El Palacio, but instead that they happened outside the premises, in the general downtown area, between patrons of the various bars.

Defendants point to the "location" identified in the police reports, which attributes the incidents to El Palacio.  Defendants claim that officers have no control over this identified location because it is determined at the time a member of the public calls to report an incident to law enforcement.

However, Plaintiffs submit evidence indicating that all seventy of these police reports were radioed into dispatch by KFPD officers, rather than by members of the public.  Plaintiffs claim that Executive Director of Klamath 911 Emergency Communications District Keith Endacott pointed this out in his deposition, describing that the origin of the call can be determined on each Computer Assisted Dispatch ("CAD") report.  When the "Created" and "Dispatched" times are the same, it is an officer-initiated call.  Keith Endacott Dep. 18:09-19:20 (attached to Decl.

Selvig as Ex. 2); Decl. Selvig Ex. 27.  Plaintiffs assert that this evidence supports their claim that officers were misattributing incidents that happened in the downtown area only to El Palacio, even when other establishments and patrons were involved.

After the second public nuisance letter was issued in May 2016, Chief Henslee met with Antonio Cisneros and Carlos Faiers.  Decl. Carlos Faiers ¶ 8.  Plaintiffs claim that Chief Henslee told them during that meeting that he was going to try to get their liquor license revoked.  *Id*.  He also said, "It's not your bar that's the problem, it's the people and your culture" and that El Palacio needs to be "pulled up like a weed."  *Id*.  Chief Henslee disputes the context of these comments and the significance of this conversation.

Plaintiffs claim that around this same time Chief Henslee began pressuring the Oregon Liquor Control Commission ("OLCC") to start an investigation into El Palacio for a history of serious and persistent problems ("HSPP") in violation of ORS 471.315(1)(c).  Decl. Selvig Ex. 5-6.  OLCC investigator Kent Oldham was the person in charge of gathering information to assist the OLCC in determining whether  to start an HSPP investigation.  Oldham Dep. 23: 17-24:07.  Oldham is a dual-investigator of both licensing and enforcement and has worked in that capacity in Klamath County for over twenty years.  *Id*. at 13:09-13, 12:15-21.  Oldham also served as a reserve officer for the KFPD for 13 years.  *Id*. at 12:21-13:03; 96:18-20.  Plaintiffs claim that KFPD collected the seventy police reports referenced in Chief Henslee's second public nuisance letter and supplied those reports, on its own initiative, to

Oldham, beginning in late 2015. *Id.* at 22:05-21.

Oldham testified that KFPD did not supply police reports for any other establishments on its own initiative to Oldham during this time. *Id.* at 22:14-16. Oldham also testified that he did not know of problems associated with El Palacio at that time. *Id.* at 27:01-05. Oldham testified that the VFW and Black Dog Billiards were establishments with issues comparable to El Palacio. *Id.* at 27:12-28:11. He also described that the establishments in the downtown area in general had issues with problematic patrons for about eight years before the El Palacio investigation. *Id.* at 86:03-12. Despite that history, El Palacio has been the only HSPP investigation Oldham has conducted in his twenty-one years with the OLCC. *Id.* at 33:25-35:11. Since Oldham is the only OLCC investigator in Klamath County, this means that El Palacio is the only establishment in the county to undergo an HSPP investigation in the last two decades. *Id.* at 13:14-16.

Oldham prepared an Intake/Compliance Action Report on June 23, 2016, recommending that an HSPP investigation occur based on the police reports provided by KFPD. *Id.* at 82:02-14; Decl. Selvig Ex. 14. After the June 23, 2016 report, Oldham began investigating all subsequent incoming police reports. Oldham Dep. 32:23-33:21. In his investigation of twelve reported incidents between June 2016 and February 2017, Oldham found a single instance of an OLCC violation attributable to El Palacio. *Id.* at 60:17-61:23, 64:08-15, 76:01-06; Decl. Selvig Ex. 21. This single instance involved serving alcohol to a minor during an OLCC sting operation. *Id.* Fifteen establishments were targeted by the sting operation: El Palacio was one of

nine that served alcohol to the minor.  Oldham Dep. 60:24-61:02.

The other eleven reports investigated by Oldham either were not OLCC violations or could not be attributed to El Palacio.  *Id*. at 37:10-38:20, 39:20-40:16, 510:4-52:21,  53:01-55:08,  55:16-57:05,  57:08-59:21,  66:01-16,  68:03-69:16,  69:23-71:07, 71:11-72:07, 72:17-73:14; Decl. Selvig Ex. 15-20, 22-26.  Regarding the patrons involved in the various reports, Oldham testified that "there needs to be more concrete evidence that the patron frequented the premises, rather than, you know, being in the CAD notes."  Oldham Dep. 53:12-17, 56:21-25, 96:21-23.

While Oldham's investigation was ongoing, Chief Henslee submitted a letter to the OLCC dated August 22, 2016. Decl. Selvig Ex.7.  This letter was an "Unfavorable Recommendation For Liquor License Renewal," for El Palacio.  *Id*.  In the letter, Chief Henslee highlighted all seventy police reports upon which he based the May 18, 2016 public nuisance notice.  *Id*.  Oldham testified that this is the only unfavorable recommendation regarding a liquor license renewal for a downtown Klamath Falls establishment that OLCC has received from KFPD. Oldham Dep. 44:22-45:21, 46:16-25.

In April 2017, OLCC held an administrative hearing, ultimately revoking the Cisneros' liquor license.  *Id*. at 35:22-36:2, 76:17-23.  Decl. Selvig Ex. 30.  After the Cisneros' s lost their liquor license, their son Carlos Faiers purchased the business from his parents and applied for his own liquor license from the OLCC.  Decl. Faiers ¶ 19.  The Klamath Falls City Council held a public hearing and then submitted a recommendation on approving or denying the application to the OLCC.  Plaintiffs

claim that this type of action was unusual for the City Council. Decl. Selvig Ex. 8. The public hearing on Carlos Faiers' application was set for November 6, 2017. *Id.*

On October 31, 2017, KFPD wrote a letter recommending the City Council recommend that OLCC deny the application. *Id.* at 5. Before the hearing, Councilor Kendall Bell emailed Chief Henslee and requested information about El Palacio. She stated that this type of pre-hearing discussion was out of the ordinary for her. Bell Dep. 35:13-36:07, 37:07-13 (attached to Decl. Selvig as Ex. 3); Decl. Selvig Ex. 10.

At the hearing, members of the public testified about concerns that El Palacio was being targeted based on the Cisneros's race. Bell Dep. 28:15-29:19. The councilors then voted. *Id.* at 31:13-14. The 3-2 decision was to recommend approval of Carlos Faiers' liquor license with the restriction that alcohol sales would not be allowed after 10:00 p.m.

Two days after the vote, Councilor Bell emailed Chief Henslee stating that she let the Chief down and was "so very sorry," and, in a subsequent email, asked what else could be done concerning El Palacio. *Id.* at 41:05-42:17, 46:14-14; Decl. Selvig Exs. 11, 12.

Three days after the vote, Klamath Falls City Manager Nathan Cherpeski drafted a document entitled, "Thursday Update," wherein he addressed the City Council's vote to "set the record straight" that police were not "unfairly targeting" Plaintiffs based on race. Decl. Cherpeski Ex. 1. Cherpeski testified that, in general, addressing issues from past Council votes in a routine update is not ordinary. Cherpeski Dep. 26:9-22. Cherpeski knew that this document would be posted publicly

on the city's website. *Id*. at 29:08-12.

On November 21, 2017, Councilor Bell wrote a letter to Plaintiff Carlos Faiers, reproduced in part below, discussing "the way things play[ed] out" at the City Council hearing, explaining that she left unaddressed certain points:

> "You had three testimonials that stood out to me.  One made the claim that the Police Department was being 'racist' in picking on your business. Being 'racist' would have meant that another establishment with the same long list of incidences was not being penalized.   There are at least 15 other restaurants in the community that are run by Hispanics that are not being penalized because they are following the rules.  Again no racism can be claimed."

Decl. Montoya Ex. 20; Bell Dep. 48:10-50:08; Decl. Selvig Ex. 13.  The letter was copied to Chief Henslee, Oldham, and James Hunter at the OLCC Regional Office. Decl. Selvig Ex. 13.  Councilor Bell stated that she has never sent out any similar letters after a Council vote.  Bell Dep. 49:10-15.

## DISCUSSION

Plaintiffs bring the following claims against Defendants: (1) Claims against the City, acting on its own and through the KFPD, for violations of Plaintiffs' Fourteenth Amendment civil rights, including their procedural due process rights, substantive due process rights, and the right to equal protection under the law; (2) claims for the same violations of Plaintiffs Fourteenth Amendment civil rights, alleged against the individual Defendants;[1] (3) intentional infliction of emotional

---

[1]    Defendants raise a pleading issue with this claim. It is true that the specific allegations contained in this section of the Complaint are poorly pled, merely stating that Defendants have violated 42 U.S.C. 1983, which is a vehicle for stating an underlying constitutional claim.   Compl. at 41.   However, the section also

distress, alleged against the individual Defendants. The first two sets of claims are necessarily brought under 42 U.S.C. § 1983 and the third is brought under Oregon law.

Defendants move for summary judgment on all claims. Defendants also move to strike evidence of audio recording of a conversation between Plaintiffs and Chief Henslee.

## I.    Issue Preclusion

In their Motion for Summary Judgment, Defendants argue that the issues in this case are precluded by the ruling of the OLCC when, after a hearing and a written decision by an ALJ, the agency cancelled the Cisneros's liquor license on August 1, 2017. The Court disagrees. Issue preclusion arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding. *North Clackamas Sch. Dist. v. White*, 305 Or. 48, 52, 750 P.2d 485 (1988). Issue preclusion arises if five requirements are met: (1) the issue in the two proceedings is identical; (2) the issue was actually litigated and essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded has a full and fair opportunity to be heard on that issue; (4) the party sought to be precluded was a party or was in privity with a party to the prior proceeding; and (5) the prior proceeding was the type to which the court will give preclusive effect. *Nelson*

---

incorporates by reference all the prior factual allegations and legal claims. Compl. at 40. Such factual allegations and legal claims are sufficient to state the same plausible claims for relief that were made under Claim 1, but as alleged against the individual Defendants instead of the City. To the extent Defendants attempt to have this claim dismissed under FRCP 12(b)(6), such motion is DENIED.

*v. Emerald People's Utility Dist.*, 318 Or. 99, 104 (1993) (internal citations omitted).

There is no issue preclusion in this case.  The hearing and OLCC final order determined whether sufficient evidence existed to cancel Plaintiffs' liquor license, not whether Defendants violated Plaintiffs' rights under the Fourteenth Amendment, nor whether Defendants inflicted intentional emotional distress on Plaintiffs by racially targeting them or trying to put them out of business.  Defendants argue that the ultimate issues of fact determined by the ALJ, and then by the OLCC order, include whether the police reports, detailed in Chief Henslee's public nuisance letter and later submitted to the OLCC for review, were properly attributed to El Palacio instead of to the downtown Klamath Falls area in general.  This dispute is an important part of Plaintiffs' case, but it was not "essential" to the OLCC's final decision and order.  Determination of that fact is not precluded in this case.

## II.    Defendants' Motion to Strike

Defendants move to strike Plaintiffs' assertion regarding statements made by Chief Henslee, including, "It's not your bar that's the problem, it's the people and your culture" and that El Palacio needs to be "pulled up like a weed."  Defendants claim that they learned for the first time that Faiers recorded this conversation when Plaintiffs filed their response brief and attached Faiers' declaration.  Because the recording was not disclosed or produced in discovery, Defendants move to strike the recording itself and all reference to the conversation from the record.

Federal Rule of Civil Procedure 37(c)(1) provides that if a party fails to "provide information or identify a witness as required by Rule 26(a) or (e), the party is not

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

At the oral argument hearing on July 30, 2020, Plaintiffs' counsel informed the Court that they believed the audio recording had been disclosed and that their failure to disclose it was inadvertent. Additionally, the content of the recording and the statements made by Chief Henslee were alleged in the Complaint, allowing for questions in deposition and interrogatories, even though the audio recording was not disclosed. Therefore, the Court finds that, while the failure to disclose the existence of a recording and the audio or transcript itself was not harmless, that failure was not overly prejudicial, and it was not done in bad faith. The alleged comments were disclosed to Defendants, so at the very least, those comments should not be suppressed or stricken. Moreover, Defendants did not dispute the alleged contents of the recorded comments made by Chief Henslee in their Motion for Summary Judgment, yet now claim that the recording provides a more accurate context for Chief Henslee's comments to show that they were not racially motivated. For this reason, the Court finds that the audio recording should not be stricken from the record but should be made available to a jury so that the full context and meaning of the conversation can be weighed along with all evidence in this case.

## Ill.    Equal Protection Clause of the Fourteenth Amendment

Plaintiffs submit sufficient evidence creating a question of fact as to whether Chief Henslee, Councilor Bell, and City Manager Cherpeskin violated Plaintiffs' rights under the Equal Protection Clause to be free from discrimination based on race

and from selective enforcement of the laws.  Plaintiffs also raise a question of fact as to whether that discrimination rose to the level of an informal policy or practice such that the City may be held liable.

### A.    Equal Protection: Disparate Treatment

To sustain a claim under the Equal Protection Clause, a plaintiff must provide (1) evidence of disparate treatment compared to others similarly situated, and (2) that the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose.  *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272-74 (1979); *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-66.  An equal protection claim is established when plaintiffs show they were treated differently than other similarly situated people.  *City of Cleburne v. Cleburne Living Ctr., inc.,* 473 U.S. 432, 439 (1985).  Often, such a showing is impracticable in the context of a selective enforcement case against a law enforcement officer or entity. *See, e.g., Johnson v. Crooks*, 326 F.3d 995 (8th Cir. 2003) (holding that despite the "seemingly impossible burden," proof that a similarly situated person was not stopped is required where motorists challenge their own stop on equal protection grounds); *United States v. Duque-Nava*, 315 F. Supp. 2d 1144, 1155 (D. Kan. 2004) (recognizing that, because "law enforcement agencies do not make or keep records on individuals they do not stop, and certainly not on 'similarly situated' individuals they do not stop, imposing such a requirement ... effectively denies them any ability to discover or prove such a claim.").

Plaintiffs here have submitted evidence, discussed above, that they were

treated differently than other similarly situated, but white-owned establishments in Klamath Falls.  The evidence shows significant criminal activity in the general downtown area of Klamath Falls, not just near El Palacio.  Oldham, the OLCC investigator, testified that the establishments in the downtown area had problems with drunk patrons for eight years before the El Palacio investigation, noting law enforcement incidents at the Black Dog and the VFW.

Defendants assert that Plaintiffs were not treated differently than these other bars, but the evidence creates a question of fact as to that assertion: First, on August 17, 2016, Chief Henslee sent a Public Nuisance Notice letter to Karen Johnson, President of the VFW, a bar located within a few blocks of El Palacio.  As with the letters to Plaintiffs, Chief Henslee advised in his letter to Johnson that the VFW "has been the location: of a pattern of activity that has the potential to cause the subject property to be declared a 'Public Nuisance' as defined by City Code."  Chief Henslee further advised that if this pattern of behaviors continued, the City Council could make a Public Nuisance declaration.  Chief Henslee's letter provided the dates, times, violations and number of arrests for five incidents that occurred between July 16, 2016, and August 7, 2016.

These facts show that VFW was "similarly situated" to El Palacio.  However, unlike the continuing law enforcement activity that persisted in Plaintiffs' case, Defendants claim that "VFW timely abated the nuisance activities at their establishment and no further enforcement of the Nuisance Property Ordinance was taken by KFPD."  Defendants provide no further explanation regarding how the

nuisance activity was abated, nor do they distinguish VFW's situation.  If it is a matter of cooperation with law enforcement, Plaintiffs claim that they did cooperate with KFPD, adjusting El Palacio's hours, closing early, increasing security, and changing security companies.  Chief Henslee admitted in his second letter that Plaintiffs made efforts to abate the nuisance.  A jury could make a plausible inference that VFW was not targeted for the same level of continuing law enforcement activity as El Palacio despite a similar history of criminal activity and a similar effort to abate that activity.  Accordingly, individual Defendants have not met the burden to prevail on summary judgment.

### B.    Equal Protection: Discriminatory Purpose

In addition to showing they were treated differently than similarly situated individuals, Plaintiffs must show that the acts forming the basis of their claim were motivated by a discriminatory purpose.  *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272-74 870 (1979); *Arlington Heights*, 429 U.S. at 264-66.  A plaintiff does not have to prove that the discriminatory purpose was the sole purpose of the challenged action, but only that it was a "motivating factor."  *Arce v. Douglas*, 793 F.3d 968, 977 (9th Cir. 2015) citing *Arlington Heights*, 429 U.S. at 266.

The Supreme Court articulated the following, non-exhaustive factors that a court should consider in assessing whether a defendant acted with discriminatory purpose: (1) the impact of the official action and whether it bears more heavily on one race than another; (2) the historical background of the decision; (3) the specific sequence of events leading to the challenged action; (4) the defendant's departures

from normal procedures or substantive conclusions; and (5) the relevant legislative or administrative history.  *Id*. at 266-68; *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158-59 (9th Cir.2013).  Moreover, when relying on *Arlington Heights* to demonstrate that an action was motivated by a discriminatory purpose, a plaintiff need provide "very little such evidence to raise a genuine issue of fact; any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder." *Pac. Shores Props*., 730 F.3d at 1159 (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir.1996)) (internal alterations omitted).

The evidence in this case creates a genuine issue of fact as to whether Defendants' actions were taken subject to a discriminatory motive.  First, it is undisputed that Plaintiffs are Hispanic and owners of the other similarly situated bars such as the VFW and The Pikey are white.  Second, the comments made by Chief Henslee that, "It's not your bar that's the problem, it's the people and your culture" and that El Palacio needs to be "pulled up like a weed," raise the specter of racial discrimination.  Viewed in the light most favorable to the non-moving party, a reasonable jury could construe those comments as racially motivated.  Third, at the public hearing on Faiers' OLCC license application on November 6, 2017, both parties allege that many members of the public testified about concerns that El Palacio was being targeted based on the Cisneros's race, demonstrating that there were contemporary concerns about the City's actions.  Plaintiffs have therefore raised a question of fact as to whether individual Defendants' disparate treatment was

racially motivated.

### C.    Municipal Liability

Municipalities can be sued for monetary, declaratory, or injunctive relief for deprivations of constitutional or civil rights. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality cannot be held liable for the actions of its employees under the theory of respondeat superior. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (citing *Monell*, 436 U.S. at 691). Plaintiffs seeking to impose liability on a municipality under section 1983 must identify a municipal "policy" or "custom" causing their injury. *Board of County Com'rs v. Brown*, 520 U.S. 397,403 (1997) (citing *Monell*, 436 U.S. at 694). An unconstitutional deprivation is caused by a municipal "policy" if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself. *Brown*, 520 U.S. at 403-04. Similarly, "custom" has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law. *Id.* at 404.

Plaintiffs submitted evidence sufficient to raise a question of fact as to whether the discriminatory actions allegedly taken against them rose to the level of a municipal custom such that the City may be held liable. The evidence submitted, as discussed above, raises an inference that the selective enforcement of the City's public nuisance laws extended to KFPD as a whole, led by its Chief, and implemented by the officers who increased patrols, conducted walk-throughs of the restaurant, and attributed incidents and police reports to El Palacio as an establishment. KFPD sent

police reports on its own initiative to Oldham regarding incidents attributed to El Palacio but did not send similar reports about other allegedly problematic establishments. KFPD was responsible for sending public nuisance letters to Plaintiffs, sending the recommendation to the OLCC to cancel the Cisneros's liquor license, and sending the recommendation to deny Faiers' liquor license. Two separate City employees, Councilor Bell and Cherpeski, wrote letters and posted public statements allegedly disparaging Plaintiffs. That evidence creates a question of fact concerning whether a widespread practice pervasive enough to rise to the level of an informal policy or custom existed.

The City submits an extensive amount of evidence to dispute these inferences, but the Court's role is not to determine which set of facts is more plausible. A jury should weigh the evidence and determine whether the City discriminated against Plaintiffs in violation of the Equal Protection Clause by selectively enforcing its public nuisance laws.

## IV. Procedural and Substantive Due Process.

In addition to their equal protection claim, Plaintiffs allege that they suffered violations of their Fourteenth Amendment rights to procedural and substantive due process. "A Section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Westwood v. City of Hermiston*, 787 F. Supp 2d 1174, 1195 (D. Or. 2011), *aff'd*, 496 Fed Appx 728 (9th Cir 2012) (citing *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir.1993)).

"Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Kashem v. Barr*, 941 F.3d 358, 382 (9th Cir. 2019) (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260,272 (2010)). Defendants have met their burden to show that they should prevail as a matter of law on Plaintiffs' due process claims.

Plaintiffs received adequate notice in the form of the Notice of Proposed License Cancellation and Proposed Refusal to Renew License. Plaintiffs disputed the allegations in the notice, and requested a hearing, which was granted. Plaintiffs were represented by counsel and presented testimony and other evidence contesting the allegations. Plaintiffs do not argue that the process followed was inadequate. The Court concludes that Defendants are entitled to summary judgment on Plaintiffs' procedural due process claim. Further, Plaintiffs not pointed to any specific facts in their case that fall under the protections of substantive due process. Defendants are therefore entitled to summary judgment on Plaintiffs' claims for procedural and substantive due process violations.

## V.    Intentional Infliction of Emotional Distress.

"To state a claim for intentional infliction of severe emotional distress, a plaintiff must plead that (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*,

321 Or. 532, 543, 901 P.2d 841,849 (1995) (internal citation omitted).

Because proof of intent is often indirect and evidence of psychic harm is usually self-serving, proof of this tort "largely turns on the [third] element, whether a defendant's conduct is sufficiently outrageous." *House v. Hicks*, 218 Or. App. 348, 358 (2008). The determination of whether conduct is socially intolerable is, for the most part, a fact-specific inquiry. *Lathrope Olson v. Oregon Dep't of Transp.*, 128 Or. App. 405, 408, 876 P.2d 345, 346 (1994).

Accordingly, the court reviews the alleged conduct on a case-by-case basis, considering the totality of the circumstances involved, to determine whether it constitutes an "extraordinary transgression of the bounds of socially tolerable conduct." *Franklin v. PCC,* 100 Or. App. 465, 471, 787 P.2d 489 (1990). Whether acts constitute an "extraordinary transgression of the bounds of socially tolerable conduct" involves "a judgment of social standards rather than of specific occurrences." *Hall v. May Dep't. Stores Co.*, 292 Or. 131, 136-137 (1981). And, it is the defendant's specific acts, rather than their motives, that must be outrageous. *Madani v. Kendall Ford, Inc.*, 312 Or. 198, 204 (1991), *abrogated on other grounds by McGanty*, 321 Or. 532.

Viewed in the light most favorable to the nonmoving party, the evidence in the record raises a question of fact as to the individual Defendants' conduct.

## VI.    Qualified Immunity on Federal Claims

Defendants assert that Chief Henslee, Councilor Bell, and City Manager Cherpeski are entitled to qualified immunity from any federal claim. Qualified immunity protects governmental officials from suits seeking damages provided that

their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Government officials are entitled to qualified immunity if the conduct did not violate clearly established law. *Pearson v. Callahan*, 555 U.S. 223, 243 (2009). The Supreme Court has repeatedly held that the right at issue is not defined at a high level of generality. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

Defendants argue that "here, no similar case law exists that would put these Defendants on notice that they would be violating plaintiffs' constitutional rights by Chief Henslee's mere enforcement of City Ordinances and Councilor Bell and City Manager Cherpeski's written defense of KFPD." Def. Reply 40. Plaintiffs have alleged that Defendants utilized the power, authority, and resources of KFPD and the City to selectively enforce the City's public nuisance laws for racially discriminatory reasons. Prior cases provide notice of the unconstitutionality of such conduct.

For example, in *RK Ventures, Inc. v. City of Seattle*, nightclub owners argued that the city of Seattle targeted them based on the hip-hop music their club played

and their African-American patrons. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1050 (9th Cir. 2002). Such "targeting" included selective enforcement of an ordinance allowing the City to institute abatement proceedings against businesses it determined were public nuisances. *Id*. at 1051. The justification for this ordinance was to address "the public problems of increased violence, noise, public drunkenness, drug-trafficking, and other illegal activity." *Id*. The night club owners discovered handwritten notes by a city councilor contemporaneous with the passing of the ordinance noting that clubs playing hip-hop attract a criminal crowd and that "Black gangs hanging out are the problem." *Id*. The plaintiffs alleged a course of conduct following adoption of the public nuisance abatement Ordinance by which the City and the Seattle police intimidated patrons, failed to respond to calls and render assistance on request, denied requests to hire off-duty police officers to provide security, threatened to shut down the club, encouraged local residents to complain, provided false and inflammatory information to the public, targeted plaintiffs for harassment ticketing, sought to have the club's liquor license revoked, demanded early closing hours, initiated an abatement proceeding and, ultimately, forced the sale of the club. *Id*. at 1062. The Ninth Circuit determined that this evidence was sufficient to raise a genuine issue of material fact of dissimilar treatment of the nightclub owners with those catering to a white audience. *Id*. at 1063.

The facts alleged in this case are not precisely the same, but they follow a sufficiently similar pattern as to put Defendants on notice that such conduct would unreasonably violate Plaintiffs' constitutional rights. Plaintiffs' allegations include

that Chief Henslee directed patrols of El Palacio, including nightly walk-throughs of the premises, and Plaintiffs assert that under his direction, KDPD engaged in an informal policy of misattributing criminal incidents in the general area to Plaintiffs' specific establishment. Plaintiffs assert that Chief Henslee, Councilor Bell and City Manager Cherpeski in practice treated Plaintiffs' business differently by than similarly situated non-Hispanic establishments in the area and that they acted with intent to shut down El Palacio. Based on *RK Ventures*, Defendants were on notice that such conduct, if true, was unconstitutional. Defendants are not entitled to qualified immunity.

//

//

//

//

//

//

//

//

//

//

//

//

//

26 - OPINION AND ORDER

## CONCLUSION

For the reasons above, the Court ADOPTS the F&R as modified.  Defendants'
motion to strike is DENIED, and the motion for summary judgment, ECF No. 37, is
GRANTED in part and DENIED in part.  Plaintiffs' claims against Defendants Eric
Nobel and William Adams are DISMISSED.  Defendants' Motion for Summary
Judgment as to Plaintiffs' procedural and substantive due process claims are granted.
Plaintiffs have raised a sufficient dispute of material fact regarding their claim for
discrimination under the Equal Protection Clause, as against the City of Klamath
Falls and the individual Defendants, as well as their claim for intentional infliction
of emotional distress.  Issue preclusion does not apply, Defendants are not entitled to
qualified immunity.  The court further ORDERS a status conference to be held to
determine next steps in the course of litigation.

It is so ORDERED and DATED this   26th  day of May 2022.


 /s/Ann Aiken
ANN AIKEN
United States District Judge